UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANNE MICHELLE RICKLES,

    Plaintiff,

v.                                             Case No. 8:20-cv-2988-AAS

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,

    Defendant.
_____/

## ORDER

Dianne Michelle Rickles requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the parties' joint memorandum, the Commissioner's decision is **AFFIRMED.**

I.    **PROCEDURAL HISTORY**

Ms. Rickles applied for DIB and alleged disability beginning on September 18, 2017. (Tr. 15, 59–65). Disability examiners denied Ms. Rickles' applications initially and after reconsideration. (Tr. 63, 76). At Ms. Rickles'

1

request, the ALJ held a hearing on September 26, 2019. (Tr. 28–58. 104–105). The ALJ issued an unfavorable decision to Ms. Rickles on November 19, 2019. (Tr. 12–27).

On October 19, 2020, the Appeals Council denied Ms. Rickles' request for review, making the ALJ's decision final. (Tr. 1–6). Ms. Rickles requests judicial review of the Commissioner's final decision. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Background

Ms. Rickles was fifty-two years old on her alleged onset date of September 18, 2017 and the date she applied for DIB, November 7, 2017. (Tr. 59). Ms. Rickles has a high school equivalent education (GED) and has past relevant work as an administrative assistant. (Tr. 27–28, 75).

### B.    Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a) First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. 20 C.F.R. §§ 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572.

2

physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent him from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g).

The ALJ determined Ms. Rickles did not engage in substantial gainful activity since September 18, 2017. (Tr. 17). The ALJ found Ms. Rickles had these severe impairments: Sjogren's syndrome; status-post total knee replacement surgery; and a history of right carpal tunnel syndrome. (*Id.*). But the ALJ found none of Ms. Rickles' impairments or any combination of her impairments met or medically equaled the severity of an impairment in the

---

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. §§ 404.1545(a)(1).

Listings. (Tr. 18).

The ALJ found Ms. Rickles had the RFC to perform light work[4] the following nonexertional limitations:

> [Ms. Rickles] must avoid climbing ropes, scaffolds, and tall ladders (with five plus stairs); can occasionally climb lesser ladders, ramps, and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, and excessive industrial vibration; must avoid even moderate exposure to the use of industrial hazards, including use of hazardous industrial machinery and unprotected heights.

(*Id.*).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Rickles could perform her past relevant work as an administrative assistant. (Tr. 21). Thus, the ALJ concluded Ms. Rickles was not disabled since the November 7, 2017 application date. (Tr. 22).

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also*

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.   Issues on Appeal

Ms. Rickles raises three issues on appeal. First, Ms. Rickles argues the ALJ erred in concluding Ms. Rickles' severe impairment of Sjogren's syndrome did not meet the requirements of Listing 14.10 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 24, pp. 16–21). Second, Ms. Rickles argues the ALJ failed to properly evaluate the medical opinions of two treating specialists, Jeremy Boodoo, M.D., and Zaid Al Qudah, M.D. (*Id.* at 24–29). Third, Ms. Rickles argues the terms of the SSA Commissioner's appointment renders the ALJ's decision "constitutionally defective." (*Id.* at 35–37).

#### 1.   Whether the ALJ properly concluded Ms. Rickles does not meet the requirements of Listing 14.10.

Ms. Rickles argues that she meets all the requirements of Listing 14.10. (Doc. 24, pp. 16–21). In response, the Commissioner argues Ms. Rickles failed to meet her burden that she meets the requirements of Listing 14.10. (*Id.* at pp. 21–24).

A claimant must prove her impairment meets one of the listed impairments in Appendix 1 at step three. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When analyzing the Listings at step three, the ALJ is not

required "to mechanically recite the evidence leading to her determination." *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *see also Flemming v. Comm'r of Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015). A conclusory statement deciding a claimant does not have an impairment or combination of impairments medically equal to a Listing is evidence the ALJ considered the combined effects of claimant's impairments. *See Wilson*, 284 F.3d at 1224.

The plaintiff must show her impairments meet or equal an impairment in the Listings. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet Listing 14.10, the claimant must show the following:

A. Involvement of two or more organs/body systems, with:
  1. One of the organs/body systems involved to at least a moderate level of severity; and
  2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

OR

B. Repeated manifestations of Sjogren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
  1. Limitation of activities of daily living.
  2. Limitation in maintaining social functioning.

> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpart P, app. 1 § 14.10.

The regulations stipulate the "organs/body systems" that may be involved in Part A are as follows:

> musculoskeletal (arthritis, myositis), respiratory (interstitial fibrosis), gastrointestinal (dysmotility, dysphagia, involuntary weight loss), genitourinary (interstitial cystitis, renal tubular acidosis), skin (purpura, vasculitis), neurologic (central nervous system disorders, cranial and peripheral neuropathies), mental (cognitive dysfunction, poor memory), and neoplastic (lymphoma). Severe fatigue and malaise are frequently reported. Sjogren's syndrome may be associated with other autoimmune disorders (for example, rheumatoid arthritis or SLE); usually the clinical features of the associated disorder predominate.

Substantial evidence supports the ALJ's determination that Ms. Rickles did not meet Listing 14.10. The Commissioner does not contest the "moderate severity of [Ms. Rickles'] small fiber neuropathy" as one body system affected by Ms. Rickles' Sjogren's syndrome (Doc. 24, p. 22). Further, medical records leading up to Ms. Rickles' hearing before the ALJ support the conclusion that Ms. Rickles' Sjogren's syndrome caused her to suffer from moderately severe dry eyes and dry mouth. (Tr. 484, 687, 1026).

However, those same medical records do not support the conclusion that Ms. Rickles displayed two of the listed constitutional symptoms in the months before her hearing before the ALJ. While the record supports Ms. Rickles'

8

claims of fatigue, Ms. Rickles cites little to support the contention that she exhibited malaise, fever, or involuntary weight loss with moderate severity. (Tr. 713, 1011). To the contrary, the ALJ cited several recent medical reports finding Ms. Rickles in adequate physical condition without complaint of moderately severe malaise, fever, or involuntary weight loss. (Tr. 19) (*citing* (Tr. 1027, 1038, 1059). On that basis, the ALJ did not reject Ms. Rickles' diagnosis of Sjogren's syndrome but instead concluded she "responded well to her treatment for Sjogren's syndrome." (Tr. 19). Thus, substantial evidence supports the ALJ's determination that Ms. Rickles did not meet Listing 14.10.

### 2. Whether the ALJ properly evaluated Dr. Boodoo's and Dr. Al Qudah's medical opinions.

Ms. Rickles argues substantial evidence does not support the ALJ's conclusion that Dr. Boodoo and Dr. Al Qudah's medical opinions are unpersuasive. (Doc. 24, pp. 24–29). Ms. Rickles claims "the ALJ erred in failing to adequately consider the effect of all impairments, severe and not severe, on Ms. Rickles' ability to perform sustained full time employment." (*Id*. at 28). Ms. Rickles argues the ALJ improperly concluded a state agency review of her medical history was more persuasive than Dr. Boodoo and Dr. Al Qudah's medical opinions. (*Id*. at 28–29).

The ALJ discussed a March 14, 2019 examination and an August 6, 2019 examination conducted by Dr. Boodoo, as well as several employee disability

9

reports drafted by Dr. Al Qudah. (Tr. 20) (*citing* (Tr. 455–461, 786–788, 1011–1014)). The ALJ discussed Dr. Boodoo's conclusions that Ms. Rickles' pain "would interfere with the claimant's attention and concentration for even simple work tasks greater than 6 hours per day," that Ms. Rickles could not "squat, walk, or stand for long periods of time," and that "sitting, standing, and walking were each limited to 2.5 hours per day." (Tr. 20) (*citing* (Tr. 786, 1011, 1012)). The ALJ further relayed Dr. Boodoo's conclusions that Ms. Rickles "has marked limitation in maintaining social functioning and completing tasks in a timely manner due to deficiencies in concentration, persistence or pace" and "cannot perform any physical activities even simple tasks for more than a few minutes without requiring a break." (Tr. 20) (*citing* (Tr. 786, 1013)). Similarly, the ALJ discussed Dr. Al Qudah's conclusion that Ms. Rickles "could only work 6 hours per day and could not climb ladders or stairs, work above ground level, work around moving machinery, perform overhead work, kneel, crawl, bend, stoop, or squat." (Tr. 20) (*citing* (Tr. 455–461)).

The ALJ concluded Dr. Boodoo's and Dr. Al Qudah's examinations were inconsistent with the other medical evidence. (Tr. 20). In particular, the ALJ concluded the record showed "normal physical examinations from other providers" and "imaging results showing only mild pathology." (*Id.*). The ALJ pointed to examinations conducted between May 2019 and September 2019

showing Ms. Rickles exhibited normal strength, sensory levels, and range of motion. (Tr. 1038, 1059). The ALJ also found persuasive a March 2019 study that determined Ms. Rickles' upper extremities "showed only mild pathology regarding [her] carpal tunnel syndrome." (Tr. 19) (*citing* (Tr. 706–708)).

Ms. Rickles argues "the ALJ's decision to accept the opinions of nonexamining physicians who did not even find the same severe impairments over the opinions of treating specialists was not supported by substantial evidence." (Doc. 24, p. 24). Ms. Rickles is referencing an administrative review of Ms. Rickles' medical history the ALJ found persuasively concluded Ms. Rickles "could perform light exertional work with additional postural and environmental limitations" and had impairments of peripheral neuropathy and reconstructive surgery on a weight bearing joint. (Tr. 20) (*citing* (Tr. 71–76)).

Ms. Rickles cites no case law supporting her contention that "[i]f the ALJ intended to reject two treating source opinions, the ALJ at least needed to obtain medical expert advice or send Ms. Rickles for a consultative examination." (Doc. 24, p. 25). Further, as the Commissioner notes, the ALJ's conclusion that Ms. Rickles suffers from the severe impairment of Sjogren's syndrome is not at odds with the administrative agency's review of Ms. Rickles' medical history, as "small fiber neuropathy is one of the complications" of

Sjogren's syndrome. (*Id.* at 31). Thus, substantial evidence supports the ALJ's conclusion that Dr. Boodoo's and Dr. Al Qudah's evaluations of Ms. Rickles' functional capacity were unpersuasive.

### 3. Whether the ALJ's decision is constitutionally defective.

Ms. Rickles claims the Supreme Court in *Seila Law, LLC v. CFPB*, 140 S. Ct. 2183 (2020) held "it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause." (Doc. 24, p. 35). Thus, since "[t]he Commissioner of SSA is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause," Ms. Rickles argues the SSA's agency structure violates principles of separation of powers and the ALJ's decision is constitutionally defective. (*Id.* at 35–36) (*citing* 42 U.S.C. § 902(a)(3)).

The Commissioner does not contest that "42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (*Id.* at 37) (*citing* Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C. July 8, 2021)). However, assuming without deciding 42 U.S.C. § 902(a)(3) violates principles of separation of powers by restricting the capacity for the President to remove the

Commissioner from his position, Ms. Rickles has not established such a constitutional defect warrants remand in this case.

In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court determined a similar removal restriction within the organic statute of the Federal Housing Finance Agency violated the separation of powers. *Collins*, 141 at 1787. However, the Court also held "there was no constitutional defect in the statutorily prescribed method of *appointment* to that office" and therefore "no reason to regard any of the actions taken by the FHFA . . . as void." *Id*. (emphasis added). Thus, without some sort of "compensable harm" caused by the unconstitutional removal provision itself, the Court concluded its mere existence created no entitlement to retrospective relief. *Id*. at 1789.

The relevance of the Court's holdings *Seila Law* and *Collins* to this case is therefore narrow. *See Id*. at 1802 (Kagan, J., concurring) (forecasting that "a betting person might wager that the [SSA's] removal provision is next on the chopping block" while concluding the Court's "remedial analysis" in *Collins* would likely not necessitate the undoing of "the mass of SSA decisions–which would not concern the President at all"). Multiple courts reviewing denials of applications for Social Security Benefits in the wake of *Seila Law* and *Collins* have similarly concluded plaintiffs must establish the removal provision of 42

13

U.S.C. § 902(a)(3) caused some compensable harm to warrant remand.[5]

Ms. Rickles does not argue she suffered any form of compensable harm stemming from the removal provision of 42 U.S.C. § 902(a)(3). *See* (Doc. 24, pp. 35–37). Thus, Ms. Rickles has not established the ALJ's review of Ms. Rickles' claim of Social Security benefits suffers from any "unconstitutional taint" establishing a compensable harm against her. (*Id.* at 36).

## IV.   CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on April 19, 2022.

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

---

[5] *See, e.g., Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021); *Jordan v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-8022-DGC, 2022 WL 842902, at *4 (D. Ariz. Mar. 22, 2022); *Taffe v. Kijakazi*, No. 3:20-cv-1974-WVG, 2022 WL 542884, at *11 (S.D. Cal. Feb. 22, 2022); *Katrina R. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4276-MHW-CMV, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022).

15